# STATE OF CONNECTICUT *v.* JAMES MEEHAN
## (SC 16520)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Kenefick, Js.

Argued March 14—officially released May 28, 2002

*Steven D. Ecker*, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, James Meehan, appeals from the judgment of conviction, following a jury trial, of three counts of possession of a narcotic substance in violation of General Statutes § 21a-279 (a),[1] one count

---

[1] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

of larceny in the second degree in violation of General Statutes §§ 53a-119[2] and 53a-123 (a) (3)[3] and three counts of perjury in violation of General Statutes § 53a-156 (a).[4] On appeal, the defendant claims that: (1) the evidence admitted at trial was insufficient to sustain his conviction of three counts of possession of a narcotic substance and three counts of perjury; (2) the trial court improperly admitted into evidence the grand jury testimony of a certain state's witness as a prior inconsistent statement pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); and (3) the trial court improperly admitted evidence of alleged prior misconduct by the defendant to prove his larcenous intent. We agree with the defendant that the evidence was insufficient as to one count of perjury and that the trial court improperly allowed into evidence the alleged prior misconduct. In all other respects, we affirm the judgment of the trial court.

The record reflects the following facts. On August 3, 1994, the defendant, then a Hartford police officer, testified under oath before a one person grand jury investigating allegations of police misconduct by members of the Hartford police department. He stated that, during his tenure at the department, he never had possessed nor used cocaine, and never had requested that a third party purchase cocaine on his behalf. He also

---

[2] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[3] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[4] General Statutes § 53a-156 (a) provides: "A person is guilty of perjury if, in any official proceeding, he intentionally, under oath, makes a false statement, swears, affirms or testifies falsely, to a material statement which he does not believe to be true."

testified that he had not stolen $200 from Manuel Villarmarin, an alleged drug dealer, during his search of Villarmarin for illegal narcotics following a tip that Villarmarin was selling drugs and was in possession of cocaine.

On May 31, 2000, the state charged the defendant in an amended information with three counts of possession of a narcotic substance, three counts of perjury in connection with his grand jury testimony and one count of larceny in the second degree.[5] The defendant's trial commenced on June 8, 2000.

At trial, John Levesque, an employee of King's Package Store and Hartford Pet and Feed, both located on Park Street in Hartford, testified that, on three occasions between January 1 and April 30, 1994, the defendant had approached him on Park Street and had requested that he purchase cocaine on the defendant's behalf. On each occasion, the defendant gave Levesque $50 with which to purchase the cocaine. On the first occasion, the defendant gave him an additional $20 as compensation for making the purchase. On each occasion, Levesque entered the Hourglass Cafe, also located on Park Street, for the purpose of purchasing cocaine for the defendant. Each time, Levesque returned to the defendant with a baggie of cocaine, which the defendant took from him.

David Perez and Elba Lozada, both of whom also had testified before the grand jury, each testified at the defendant's trial that they had sold cocaine at the Hourglass Cafe between 1993 and 1994. Perez recalled selling cocaine to Levesque on at least one occasion between January 1 and April 30, 1994. Thereafter, Perez learned

---

[5] The state initially charged the defendant on November 15, 1994, in a ten count long form information, with three counts of possession of a narcotic substance, one count of larceny in the second degree, and six counts of perjury in connection with his grand jury testimony.

that following the sale, Levesque approached the defendant, whom Perez recognized as a police officer who frequented the area. Lozada testified that she could not recall selling cocaine to Levesque. Following efforts to refresh her memory with a transcript of her grand jury testimony, the state moved to admit the testimony for substantive purposes as a prior inconsistent statement pursuant to *State* v. *Whelan*, supra, 200 Conn. 743.[6] Over the defendant's objection, the trial court admitted the testimony. Thereafter, the state read into evidence Lozada's grand jury testimony that she had sold cocaine to Levesque in the Hourglass Cafe.

Andrew Mason, a chemist, testified that a hair sample taken from the defendant on August 12, 1994, contained traces of cocaine and that this was consistent with the defendant having ingested cocaine on numerous occasions within the seven months preceding the taking of the sample. Finally, Joseph Patrocinio, who owned the Hartford Pet and Feed where Levesque worked, testified that he had found a small, empty plastic baggie on the floor of the bathroom shortly after the defendant had been in the bathroom.

In connection with the charge of larceny in the second degree, Villarmarin testified that, one evening in August, 1994, the defendant confronted him inside the Hourglass Cafe and escorted him outside to a nearby parking lot, where he searched Villarmarin for illegal narcotics. Villarmarin was under the influence of heroin and alcohol. Villarmarin further stated that the defendant removed the contents of his pockets, which included

---

[6] In *State* v. *Whelan*, supra, 200 Conn. 753, this court held that the admissibility of a prior inconsistent statement for substantive purposes, rather than only for impeachment purposes, depends on the satisfaction of the following four requirements: (1) the statement must be in writing; (2) the statement must be signed by the declarant; (3) the declarant must possess personal knowledge of the facts contained therein; and (4) the declarant must testify at trial and be subject to cross-examination.

$350 in cash, but no illegal narcotics. The defendant then returned the contents to Villarmarin and released him. Villarmarin, thereafter, returned to the Hourglass Cafe, where he discovered that he was missing $240. Perez testified that he had observed the defendant searching Villarmarin, and had seen the defendant holding Villarmarin's wallet during the search. Perez also stated that Villarmarin appeared upset following the incident. Over the defendant's objection, the trial court admitted the testimony of Vincenzo Befi, who testified that, in November, 1993, the defendant allegedly had stolen $100 from him during a patdown search at an apartment building where Befi had gone to buy heroin.

At the conclusion of the trial, the jury found the defendant guilty of three counts of possession of a narcotic substance, three counts of perjury in connection with his grand jury testimony, and one count of larceny in the second degree. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant on each count to four years incarceration, execution suspended after fifteen months, and three years probation, said sentences to run concurrently. The defendant appealed from that judgment to the Appellate Court and, thereafter, we granted the defendant's motion to transfer the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c). This appeal followed. Additional facts will be provided as necessary.

I

We first address the defendant's claim that the state failed to produce evidence sufficient to sustain his conviction of three counts each of possession of a narcotic substance and perjury. The standard of review we apply to a claim of insufficient evidence is well established. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First,

we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 616, 682 A.2d 972 (1996).

We note that "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) Id., 617.

Moreover, "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 566–67, 778 A.2d 847 (2001).

Finally, "[a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possi-

ble doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 567.

## A

With these principles in mind, we turn first to the defendant's claim that the state failed to produce sufficient evidence to sustain his conviction of three counts of possession of a narcotic substance. The state charged the defendant in count four of a seven count information with possession of a narcotic substance on a date sometime between January 1 and April 30, 1994, in the vicinity of King's Package Store on Park Street in Hartford. In count five, the state charged the defendant with possession of a narcotic substance on a date sometime between January 1 and April 30, 1994, in a separate and distinct transaction from count four, in the vicinity of Hartford Pet and Feed on Park Street in Hartford. Finally, in count six, the state charged the defendant with possession of a narcotic substance on a date sometime between January 1 and April 30, 1994, in a separate and distinct transaction from counts four and five, in the vicinity of King's Package Store on Park Street in Hartford.

The defendant articulates several challenges to his conviction of three counts of possession. First, he contends that the evidence at trial was insufficient to prove that the substance in his possession on any of the three occasions was, in fact, cocaine. In support of this claim the defendant relies on testimony from both Lozada

and Perez that they did not sample the substance that they sold to Levesque to verify that it was, in fact, cocaine, as well as on testimony from Levesque that he did not sample the substance before giving it to the defendant. Moreover, the defendant's expert witness, Bruce Goldberger, a forensic toxicologist specializing in hair and fingernail testing for narcotics, testified that the methodology used by the state's expert to analyze the defendant's hair sample was improper, and, therefore, inconclusive with respect to whether the defendant's hair contained cocaine. Additionally, with respect to count four, the defendant contends that, because the person from whom Levesque thought he had purchased the cocaine on the first occasion[7] did not testify at trial, the evidence was insufficient for the jury reasonably to conclude that the substance Levesque purchased on that occasion was, in fact, cocaine.

Next, the defendant contends that, even if the substance in question was indeed cocaine, the state failed to provide sufficient evidence that the defendant had been in possession of cocaine on three separate and distinct occasions between January 1 and April 30, 1994. He notes that Lozada testified in June, 1994, that she had sold cocaine to Levesque "last summer," which falls outside the time frame in which the state charged that the defendant had purchased the cocaine from Levesque.[8] Additionally, the defendant contends that Levesque's confusion regarding the person from whom he had purchased the cocaine on the first occasion; see

---

[7] Levesque gave conflicting testimony as to whether he had purchased the cocaine on the first occasion from a person named Tony Santiago or another person named Tony Perez.

[8] The defendant claims that this testimony not only presents an issue of evidentiary insufficiency but also a due process problem, because a person cannot be charged with one criminal act and ultimately be convicted of a different criminal act. Because we conclude herein that Lozada's testimony could be credited to establish the sale of cocaine to the defendant, we likewise conclude that there is no merit to his due process claim.

footnote 7 of this opinion; coupled with the fact that the state's charging information in counts four and six is substantially similar, failed to provide the jury with sufficient facts from which it could distinguish beyond a reasonable doubt three separate and distinct occasions for the defendant's purchases. We are not persuaded.

We begin our analysis of the defendant's claims by underscoring that "[w]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State v. Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995). It is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony. *State v. McCarthy*, 197 Conn. 166, 179, 496 A.2d 190 (1985). In evaluating the evidence before it in the case at hand, the jury was required primarily to assess the credibility of Levesque, Lozada and Perez to determine which, if any, of their statements concerning the cocaine purchases were truthful. We will not retry these credibility determinations on appeal. See *State v. Figueroa*, 235 Conn. 145, 179, 665 A.2d 63 (1995).

In looking at all of the evidence in the light most favorable to sustaining the verdict, as we are required to do; *State v. Newsome*, supra, 238 Conn. 616; we are persuaded that there was ample additional evidence from which the jury could have concluded beyond a reasonable doubt that the substance the defendant had possessed on all three occasions was, in fact, cocaine.

From Levesque's testimony that the defendant had approached him on three occasions to purchase cocaine for him, and that two of those occasions had occurred on the same day, the jury reasonably could have inferred that the defendant returned to Levesque repeatedly because Levesque had provided the defendant with what he was looking for, namely, cocaine. Additionally, Levesque testified that on each occasion, the defendant had given him $50 with which to purchase a sixteenth of cocaine, which Lozada and Perez testified was the common price for that amount of cocaine. Levesque testified that he had purchased the cocaine from Lozada and Perez in the Hourglass Cafe. Lozada and Perez testified not only that they sold cocaine in the Hourglass Cafe between 1993 and 1994, but also that they had sold cocaine to Levesque, in particular. They further testified that, on each occasion they had given Levesque a sandwich baggie, the corner of which was tightly filled with white powder, tied with a knot and clipped, which is consistent with the packaging of powdered cocaine for resale. Patrocinio then testified that on an occasion sometime between March and May, 1994, he had discovered a corner of an empty sandwich baggie on the floor of his store's bathroom after the defendant had been inside the room. Moreover, Lozada and Perez testified that they kept the cocaine hidden in a pouch in the Hourglass Cafe, either under a game machine, behind the bar or in the women's bathroom, a secretive measure that would render it unlikely that they were hiding a benign substance. Perez further testified that he was familiar with the behavior exhibited by persons using cocaine, and that he had seen the defendant display such behavior. Finally, the hair sample taken from the defendant's head on August 12, 1994, had tested positive for the presence of cocaine, indicating the defendant had ingested cocaine sometime since January of that same year.

Furthermore, we are persuaded that the state introduced sufficient evidence from which the jury reasonably could have concluded beyond a reasonable doubt that the defendant indeed had possessed cocaine on three separate and distinct occasions between January 1 and April 30, 1994. Despite Lozada's testimony dating her participation in the transactions in question back to the summer of 1993, Levesque testified that he had purchased cocaine from Lozada in 1994. Moreover, as previously noted, the testing of the defendant's hair sample indicated that he had ingested cocaine in the seven months prior to August 12, 1994. The jury reasonably could have credited Lozada's testimony with respect to the fact that the transaction with Levesque had, in fact, occurred, and reasonably could have credited Levesque's testimony and the forensic evidence with respect to the date of that transaction.

Moreover, we are not persuaded that Levesque's confusion regarding the person from whom he had purchased the cocaine on the first occasion rendered the jury without sufficient evidence from which to conclude beyond a reasonable doubt that the defendant had purchased cocaine through Levesque on three separate and distinct occasions. Despite Levesque's uncertainty about the individual from whom he had purchased the cocaine, he testified clearly that there were three separate occasions during which he had purchased cocaine, twice in the same day in February or March, 1994, and again, one week or one month later. Furthermore, Lozada testified that she had sold cocaine to Levesque on one occasion during that same time frame, and Perez testified that he had sold cocaine to Levesque on one, and perhaps, two occasions.

We are persuaded, therefore, in light of the cumulative evidence available to the jury, that, despite the inconsistencies on which the defendant relies, the jury had sufficient evidence upon which it could have relied

to conclude beyond a reasonable doubt that the defendant had been in possession of cocaine on three separate and distinct occasions between January 1 and April 30, 1994.

### B

We turn next to the defendant's claim that the state failed to adduce sufficient evidence to sustain his conviction of three counts of perjury in connection with his grand jury testimony. The state charged the defendant in count one of the information with perjury in connection with his testimony to the grand jury that he had not used cocaine during his tenure with the Hartford police department.[9] In count two of the information, the state charged the defendant with perjury in connection with his testimony to the grand jury that he had never possessed cocaine or purchased it through a third person during his tenure with the police department.[10] In count three of the information, the state

---

[9] The defendant's grand jury testimony provided in the information in connection with the first count of perjury was the following colloquy with the state's attorney:

"[State's Attorney]: Let's get right to the heart of it, I suppose. Have you ever used, since the time—let me preface it, because I don't want to go on a fishing expedition here—from the day that you joined the Hartford police department, have you ever used a controlled substance?

"[The Defendant]: No, sir.

"Q. You never smoked marijuana?

"A. No.

"Q. Did you ever use cocaine?

"A. No."

[10] The defendant's grand jury testimony provided in the information in connection with the second count of perjury was the following with the state's attorney:

"[State's Attorney]: Have you ever, since the day you joined the Hartford police department, possessed a controlled substance other than in the ordinary course of your employment, that is, taken as a police matter to be turned in as evidence, as police evidence?

"[The Defendant]: No.

"Q. Have you ever yourself or through a third party purchased cocaine for use by yourself or someone else?

"A. No.

* * *

charged the defendant with perjury in connection with his testimony to the grand jury that he had not stolen money from Villarmarin while searching him for illegal narcotics. The defendant contends that the state introduced insufficient evidence to sustain his convictions for perjury in connection with his testimony regarding his experience with cocaine because the required corroborative evidence was insufficiently probative. The defendant also claims that the state failed to present sufficient evidence from which the jury could have concluded beyond a reasonable doubt that the defendant had committed perjury with respect to his testimony before the grand jury regarding the Villarmarin incident. Because the state has conceded the latter point in its

---

"Q. Who is this John?

"A. I don't know his last name.

"Q. Describe him for me, if you could.

"A. Kind of weird looking kid. Short, little heavy, scraggly mustache, blonde hair.

"Q. And some people think he is a little retarded, maybe?

"A. Maybe a little slow. I never thought he was retarded.
                              * * *
"Q. Okay. Is that somebody you were friendly with?

"A. Yeah, because he was in the store all the time. Every day.

"Q. Did he ever run errands for you?

"A. He used to go down and get a sandwich or stuff like that.

"Q. Did you ever use him for any law enforcement purposes?

"A. Well, he was always trying to help me out, but because—like you said, because of his—I never really put too much stock in it. And he was up there all the time.

"Q. And when you say he'd try to help you out, how would he do that?

"A. By trying to tell me who was doing business that day, where it was. They used to hide it in the Hourglass [Cafe]. He told me on numerous occasions where he thought it was, and I would go in there and check, but—

"Q. On how many occasions did you have him purchase cocaine for you?

"A. I never had him purchase cocaine for me.
                              * * *
"Q. Did you at any point give John $50 to purchase a sixteenth of cocaine for you from the Hourglass Cafe or any other place?

"A. No.

"Q. At any point did you subsequently give $70 to John to purchase an eightball of cocaine for you?

"A. No."

brief, we address only the defendant's claims with respect to counts one and two, which we reject.

As we previously noted, ordinarily, the test for determining whether the evidence is sufficient to support a conviction is whether the trier reasonably could have concluded, upon the facts established and the reasonable inferences drawn therefrom, construed in the light most favorable to sustaining the verdict, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Newsome*, supra, 238 Conn. 616. In reviewing the sufficiency of the evidence in a case involving a conviction for perjury, however, there is an additional inquiry: whether the evidence is sufficient to satisfy the requirements of the so-called "one-witness-plus-corroboration" rule. *State* v. *Sanchez*, 204 Conn. 472, 477–79, 528 A.2d 373 (1987). Under this rule, a perjury conviction cannot be based solely upon the testimony of a single witness; it must also be based on corroborative evidence that tends to establish the falsity of the statement, independently of the principle evidence that it corroborates. Id., 480–81. Moreover, "[w]hen documentary evidence is substituted for the testimony of a live witness . . . that evidence must be of a highly reliable order . . . ." Id., 480.

In the present case, a review of the record reveals that the state introduced sufficient evidence to satisfy the requirements of the rule. The state charged the defendant in counts one and two of committing perjury when he testified falsely under oath before the grand jury that he never had used nor possessed cocaine during his tenure with the Hartford police department. To prove the element of falsity, the state introduced Levesque's testimony that the defendant had approached Levesque on three occasions to request that he purchase cocaine for him. To corroborate this evidence on the element of falsity with respect to the

defendant's use of cocaine, the state introduced Perez' testimony that he was familiar with the behavior exhibited by an individual under the influence of cocaine and that he had seen the defendant exhibiting such behavior. The state also submitted Mason's testimony regarding the presence of cocaine in the defendant's hair sample. To corroborate the state's evidence of the element of falsity with respect to the defendant's possession of cocaine, the state introduced evidence, in addition to that tending to demonstrate the defendant's use of cocaine, that Patrocinio had found a small, empty plastic sandwich baggie, like the type described by Perez and Lozada, on the floor near the toilet in his store's bathroom after the defendant had left the bathroom. This evidence was sufficient to corroborate testimony by Levesque, Lozada and Perez that the defendant's grand jury testimony with regard to the first two counts of perjury had been false.

The defendant contends, however, that Perez' testimony was not of a "highly reliable order . . . ." Id. He points to the facts that Perez had admitted to perjuring himself in his grand jury testimony and that he is a felon. Moreover, the defendant claims that Perez was an interested witness because the defendant previously had arrested his cousin. Finally, the defendant notes that Perez had testified to having seen the defendant holding Villarmarin's wallet during the alleged larceny, but that Villarmarin testified that he did not carry a wallet. We are not persuaded.

First, the defendant misstates the one-witness-plus-corroboration rule. Only when *documentary* evidence provides the sole independent corroboration must it be of a "highly reliable order . . . ." Id. Second, the impeachment of Perez' testimony to which the defendant refers does not undermine what is otherwise a proper application of the rule. Perez testified to information about which he had personal knowledge. Such

testimony is sufficiently reliable for purposes of the one-witness-plus-corroboration rule, even if the jury ultimately concludes that the witness is incorrect or lacking in credibility. As we stated previously, the credibility of witnesses, unlike the threshold issue of reliability, is for the jury to determine and we will not retry these credibility determinations on appeal. See *State* v. *Figueroa,* supra, 235 Conn. 179. We reject, therefore, the defendant's claim that the state adduced insufficient evidence on the element of falsity with respect to the first two counts of perjury.

## II

We turn next to the defendant's claim that the trial court improperly admitted for substantive purposes pursuant to *State* v. *Whelan,* supra, 200 Conn. 743, Lozada's grand jury testimony that she had sold cocaine to Levesque after Lozada testified that she could not recall making such a sale. Specifically, the defendant claims that *Whelan* requires, inter alia, a finding that memory loss is feigned, not actual, in order for a prior statement to constitute an inconsistent statement and, therefore, that the trial court's admission of the testimony as a prior inconsistent statement was improper because the court failed to make such a predicate finding. We decline to reach this claim, however, because the defendant has not preserved his claim for appeal.

"The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan,* is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Citation omitted.) *State* v. *Newsome,* supra, 238 Conn. 596. It is well established, however, that "[o]ur review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. . . . This court reviews rulings solely

on the ground on which the party's objection is based. . . . [A]rticulating the basis of the objection alert[s] the court to any claims of error while there is still an opportunity for correction." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 310, 664 A.2d 743 (1995).

At trial, the defendant objected to the state's offer of Lozada's grand jury testimony, claiming that it did not satisfy the criteria for admissibility established in *Whelan*; see footnote 6 of this opinion; because the testimony was unsigned, because Lozada's memory loss rendered her functionally unavailable for cross-examination, and because her testimony was not otherwise sufficiently reliable or trustworthy. The trial court addressed these objections when it admitted Lozada's grand jury testimony. The court reasoned that Lozada was in court and testifying, which was sufficient to render her available for cross-examination regarding her grand jury testimony. The court further reasoned that the fact that she had not signed her grand jury testimony was not dispositive of its admissibility at trial, because her testimony before the grand jury contained sufficient comparable indicia of reliability, namely, that it was made under oath, and that Lozada testified at trial not only to the fact that she had testified before the grand jury, but also to the fact that when she had done so, she had told the truth.

The defendant did not raise the objection in the trial court, as he does here, that Lozada's memory loss was not feigned, but, rather, was genuine, and that her testimony was, therefore, inadmissible pursuant to *Whelan*. Accordingly, "neither the trial court nor the prosecution was alerted to the possibility that the defendant's objection was grounded on anything other than [the fact that Lozada's testimony was unsigned and was not otherwise reliable]. The state, therefore, did not have the opportunity to address or the court the occasion to

[consider this ground as a basis for objection]. Thus, to review the defendant's claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Newsome,* supra, 238 Conn. 597. We, therefore, do not reach the merits of the defendant's claim.

## III

Finally, we address the defendant's claim that the trial court improperly admitted evidence of the defendant's alleged prior uncharged misconduct. Specifically, the defendant claims that the court's admission of Befi's testimony that the defendant had stolen money from him during a patdown search to prove that the defendant had intended to steal money from Villarmarin during a subsequent, unrelated search was improper and, therefore, his conviction of larceny in the second degree should be reversed. We agree.

The following additional facts and procedural history are pertinent to this claim. During the course of the trial, the court held a hearing outside the presence of the jury to determine whether it should permit the state to introduce testimony from Befi regarding an alleged larceny involving the defendant. At that hearing, Befi indicated that he would testify to the following facts. On November 18, 1993, the defendant approached him at an apartment building in Hartford, where Befi had gone to purchase heroin. The defendant informed Befi that he was responding to a call about a disturbance in the area, and directed Befi to follow him into the apartment building. Once inside the building, the defendant ordered Befi to face the wall, and then searched him. The defendant examined Befi's wallet, which contained no money. The defendant then searched Befi's pockets, which contained $180, consisting of one $100 bill and four $20 bills. Befi heard the defendant count

the money, and then felt him place the money back in Befi's pocket. The defendant released Befi, and Befi counted his money and noticed that the $100 bill was missing. Befi confronted the defendant, and the defendant denied taking any of Befi's money. Thereafter, Befi noted the number of the defendant's police car, went to the police station, and reported the incident.

The state contended that Befi's testimony was admissible as evidence of a common scheme of criminal activity and of intent. With respect to common scheme, the state claimed that Befi's testimony that the defendant had stolen money from him during the course of a patdown was relevant to whether the defendant had stolen money from Villarmarin during the search. The defendant contended that routine police practices, such as patdowns for illegal narcotics, cannot constitute a common scheme of criminal activity. As such, the defendant maintained that, even if evidence of such conduct were relevant to a common scheme, its routine nature rendered it more prejudicial than probative and, therefore, inadmissible. With respect to intent, the state claimed that Befi's testimony that the defendant had stolen his money during a search was relevant to whether the defendant possessed the specific intent to appropriate Villarmarin's money when he had searched him, a requisite element of the crime of larceny. The defendant maintained that the alleged incident involving Befi was irrelevant to whether the defendant possessed the requisite intent to deprive Villarmarin of his money during a subsequent, unrelated search.

Noting the infrequency of the alleged prior misconduct and the lack of temporal proximity between the incident involving Befi and the occurrence with Villarmarin, the trial court determined that Befi's testimony was not relevant to common scheme.[11] The trial

---

[11] The state does not contend in this appeal that Befi's testimony should have been admitted as relevant to common scheme and, accordingly, we

court concluded, however, that Befi's testimony was relevant to intent. The court reasoned that the defendant's alleged misconduct during his search of Befi was relevant to the state's burden of proving that the defendant possessed the specific intent to deprive Villarmarin of his money when the defendant searched him. The court also noted that the defendant had opened the door to such evidence by attempting to establish on cross-examination of Villarmarin that the defendant's search of Villarmarin comported with lawful and ordinary police practices. Finally, citing the same reasoning, the court concluded that Befi's testimony was more probative than prejudicial and was, therefore, admissible. Thereafter, the court admitted the testimony, and instructed the jury that it could consider the evidence only with respect to the issue of whether the defendant had the legally required intent to appropriate the money in Villarmarin's possession, and not as indicative of any criminal proclivity of the defendant to steal money during searches for illegal narcotics.

We begin our review of the trial court's conclusion by underscoring that "[a]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence may be admissible, however, for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." (Citations omitted; internal quotation marks omitted.) State v. George B., 258 Conn. 779, 790, 785 A.2d 573 (2001). "To determine whether

review only the issue of whether the trial court improperly admitted the testimony as relevant to intent.

evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 397, 788 A.2d 1221 (2002).

Furthermore, we note that the standard by which we review the defendant's claim is well established. "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) Id. "[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 892, 776 A.2d 1091 (2001).

With these principles in mind, we turn to the defendant's claim that the trial court improperly admitted Befi's testimony to prove the defendant's intent to appropriate the money in Villarmarin's possession during a search for illegal narcotics. "The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted." *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994). In the present case, the state was required to prove each element of larceny in the second degree beyond a reasonable doubt in order to sustain the defendant's conviction. General Statutes § 53a-119 provides in relevant part that "[a] person commits larceny when, with intent

to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." As part of its case-in-chief, therefore, the state offered, and the trial court admitted, Befi's testimony that the defendant allegedly had taken Befi's money during a patdown as relevant to the intent exception on the theory that it tended to establish that the defendant, when conducting a patdown of Villarmarin, had the specific intent to appropriate the money in Villarmarin's possession.

On appeal, the defendant contends that the trial court improperly admitted Befi's testimony as relevant to intent because his alleged *behavior* with respect to Befi was irrelevant to his *state of mind* during the subsequent, unrelated incident involving Villarmarin. The defendant articulates two related arguments in this regard. First, he maintains that Befi's testimony, at best, could tend to establish only that the defendant intentionally conducted an illegal search. The intent that the state had to prove pursuant to § 53a-119, however, was not the generalized intent to conduct an illegal search, but, rather, the *specific* intent to deprive Villarmarin of his money, and to keep it, with the knowledge that the money was not the defendant's to take. Second, the defendant claims that Befi's testimony is irrelevant even to the defendant's generalized intent to conduct an illegal search of Villarmarin because the defendant's state of mind during the alleged incident with Befi did not render more or less likely the presence of the specific state of mind to appropriate wrongfully Villarmarin's money.[12] Concluding otherwise, the defendant contends, amounts to indulging the prohibited logic of pro-

---

[12] The defendant contends that the relevance of Befi's testimony to establish a generalized intent to perform illegal searches is further undermined by the trial court's rejection of the relevance of Befi's testimony to common scheme.

pensity, namely, that if the defendant allegedly appropriated Befi's money on one occasion, it is more likely than not that he engaged in the same behavior during the subsequent, unrelated occasion involving Villarmarin. The defendant maintains that this is the very inference prohibited by the rule rendering uncharged prior acts generally inadmissible.

It is well established that evidence of other crimes or bad acts is normally treated as inadmissible character evidence. See, e.g., 1 C. McCormick, Evidence (5th Ed. 1999) § 190. "[E]vidence of character in any form—reputation, opinion from observation, or specific acts—generally will not be received to prove that a person engaged in certain conduct or did so with a particular intent on a specific occasion, so-called circumstantial use of character. The reason is the familiar one of prejudice outweighing probative value. Character evidence used for this purpose, while typically being of relatively slight value, usually is laden with the dangerous baggage of prejudice, distraction, and time-consumption." Id., § 188, p. 654.

In the case at hand, Befi's testimony that the defendant allegedly took some of Befi's money during a search for illegal narcotics does not render it more or less likely that the defendant, during a subsequent, unrelated search of Villarmarin, had the specific intent to appropriate the money in Villarmarin's possession. If believed, Befi's testimony would establish that the defendant had searched him and that, during the course of that search, the defendant had taken some of the money in Befi's possession. This evidence tends to suggest only the likelihood of the defendant's *actions* with respect to Villarmarin, namely, the likelihood that he also searched and took money from Villarmarin. It does not, however, establish that he had the requisite state of mind when he engaged in that conduct. Cf. *State* v. *Tucker*, 181 Conn. 406, 415–17, 435 A.2d 986 (1980)

(defendant's repeated acts of child abuse relevant to establish he intentionally caused death). Moreover, this evidence was particularly prejudicial, despite the trial court's limiting instructions, in light of the fact that the evidence not only suggested that the defendant, a police officer, had a propensity to abuse his authority, but also that he had a proclivity to do so during the course of a common and routine police practice in which he frequently was required to participate. The trial court, therefore, improperly admitted Befi's testimony regarding the defendant's alleged prior misconduct.

The distinction between using evidence to prove an act and using evidence to prove intent is consistent with our prior case law. In *State* v. *Baldwin*, 224 Conn. 347, 353–54, 618 A.2d 513 (1993), for example, the state had introduced evidence testimony that the defendant had been observed motioning to and running up to cars and, thereafter, had been found in possession of eight or nine vials of narcotics to prove that, in a subsequent incident, the defendant had the specific intent to sell the narcotics in his possession. In affirming the judgment of the trial court admitting the evidence of the defendant's prior misconduct, this court held that the evidence was irrelevant and inadmissible as proof of the subsequent *act of possession*, but was relevant and admissible as evidence with respect to the issue of *intent*, namely, of possession with *intent to sell*. Id., 355–56, 358; see also *State* v. *Tucker*, supra, 181 Conn. 417 (trial court properly admitted evidence of prior acts of child abuse against same victim to prove specific intent to murder and lack of accident, but not to prove act of murder itself); *State* v. *James*, 54 Conn. App. 26, 40–41, 734 A.2d 1012, cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999) (trial court properly admitted evidence of defendant's prior threats against victim as relevant to intent and motive to kill her, but not to prove act of killing itself); *State* v. *Cepeda*, 51 Conn. App. 409, 433, 723 A.2d

331, cert. denied, 248 Conn. 912, 732 A.2d 180 (1999) (trial court properly admitted evidence of prior aggression against victim as relevant to intent and motive to shoot her, but not to prove act of shooting itself). Accordingly, despite affording every reasonable presumption in favor of the trial court, we conclude that Befi's testimony had no permissible use and, therefore, was admitted improperly.

Having concluded that the trial court improperly admitted Befi's testimony, we turn to the question of whether the court's decision constituted harmful error. The standard for determining whether a nonconstitutional error is harmful is whether "it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Cavell*, 235 Conn. 711, 721–22, 670 A.2d 261 (1996).[13] The following additional facts are relevant to our resolution of this question.

In addition to Befi's testimony, the state introduced testimony from Perez and Villarmarin. Perez testified that he had followed the defendant as he led Villarmarin out of the Hourglass Cafe and had witnessed the defendant's search of Villarmarin in the parking lot. Perez saw the defendant take what appeared to be a wallet out of Villarmarin's pocket, and could not discern whether the apparent wallet was, instead, money. He

---

[13] In *State* v. *Young*, 258 Conn. 79, 95, 779 A.2d 112 (2001), this court noted, without resolving, that there appear to be two standards of review for establishing the existence of harmful error. "One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict." (Citations omitted; internal quotation marks omitted.) Id. We conclude that the evidence admitted in the present case constitutes harmful error under either standard and, accordingly, we decline to reach the question of the dual standards at this time. See id. (declining to reach issue of dual standards when error is harmless under both).

also observed Villarmarin behaving in an "upset" manner following the search. Perez admitted to having engaged in drug trafficking, to his status as a convicted felon and to having perjured himself in front of the grand jury in connection with the investigation of the defendant. On cross-examination, Perez also admitted that the defendant previously had arrested his cousin. Villarmarin, a convicted felon, testified that he was under the influence of heroin and alcohol when the search occurred, and that he had lied about this fact in his testimony to the grand jury. He also testified that he never carried a wallet.

To sustain the defendant's conviction of larceny in the second degree, the jury had to be able to conclude that the defendant was guilty beyond a reasonable doubt. In light of the record before us, we cannot conclude that Befi's testimony did not undermine the verdict. As we discussed previously, the primary thrust of the evidence introduced at trial was proffered to prove that the defendant had purchased and possessed illegal narcotics and that he had lied about those facts to the grand jury investigating his conduct. This evidence does not tend to make it more or less likely, however, that the defendant abused his authority as a police officer to shake down and steal money from Villarmarin. Moreover, the only evidence the state presented to establish the defendant's guilt, other than Befi's testimony, was the conflicting testimony of two convicted felons— Perez, an admitted drug dealer and Villarmarin, an admitted drug user—both of whom stated that their testimonies before the grand jury had been untruthful. Furthermore, Perez' testimony tended to establish only that the uncontested search of Villarmarin, indeed, had occurred. Finally, Villarmarin, the alleged victim, undermined his credibility by testifying to having been under the influence of heroin and alcohol during the alleged larceny. Given the weakness of this evidence, we are

persuaded that Befi's testimony that the defendant allegedly had stolen money from him during a previous patdown formed a powerful and prejudicial bridge between the evidence presented and the jury's conclusion that the defendant had committed larceny, and that the court's limiting instructions were not sufficient to cure the improper admission. As such, we conclude that it is more probable than not that the trial court's improper admission of Befi's testimony affected the jury's conclusion that the defendant was guilty of larceny in the second degree beyond a reasonable doubt and, accordingly, that the court's admission of that evidence was not harmless error.

The judgment is reversed in part and the case is remanded with direction to render judgment of acquittal on the third count of perjury and for a new trial on the count of larceny in the second degree; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.