## STATE OF CONNECTICUT *v.* JOSEPH G. HILL
### (AC 27512)

Flynn, C. J., and Harper and Pellegrino, Js.

Argued April 24—officially released July 17, 2007

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Paul J. Ferencek*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Joseph G. Hill, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49[1] and 53a-134 (a) (3).[2] On appeal, the defendant claims that the court's charge to the jury was ambiguous in that it failed to instruct the jury that it could only find him guilty if it found that the coparticipant in the crime used or threatened the use of a dangerous instrument. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

The following facts, which the jury reasonably could have found, are relevant to the defendant's appeal. At approximately 1:30 a.m. on May 21, 2002, Jorge Vega Pivaral, the complaining witness, was driving in the area of West Main Street in Stamford and was trying to locate his cousin. Pivaral, confused by the one-way streets, began to circle the area several times. Eventually, Pivaral turned onto Ann Street and observed the defendant and Miguel Cruz standing on a sidewalk on that street. As Pivaral turned onto Ann Street, the defendant asked Pivaral, through the open driver's side window, if he wanted to purchase any drugs, to which Pivaral declined. Cruz also asked Pivaral if he wanted any drugs. After responding that he did not want to buy any drugs, Pivaral asked the defendant and Cruz if they knew where he could find his cousin. Cruz replied that he knew where Pivaral's cousin lived and then told Pivaral to find a parking spot. Pivaral drove a short distance before parking his truck on the side of the road.

After Pivaral parked his truck, the defendant entered the vehicle, sat in the passenger seat and asked Pivaral for a cigarette. Pivaral gave the defenadnt two cigarettes, and, thereafter, Cruz ran up the street, returning to the truck a moment later. When Cruz returned, he approached Pivaral, who still was sitting in the driver's seat, and directed the pointed end of a big, wooden stick at Pivaral's face. Cruz demanded that Pivaral give him money, but Pivaral informed him that he did not have any money. When the defendant attempted to remove the keys from the ignition, Pivaral tried to kick him, but Cruz then began striking Pivaral in the head with the pointed stick. While Pivaral was being hit with the stick, the defendant removed the keys from the ignition and reached into Pivaral's pockets, looking for money. Pivaral sounded the truck's horn, causing the defendant and Cruz to flee. After using his cellular telephone to notify the police of the incident, Pivaral began

to chase the defendant and Cruz. Pivaral caught up with the defendant and Cruz and asked them to return his keys, but they responded by demanding money. Thereafter, the police arrived, apprehended the defendant and later located Pivaral's keys and the bloody stick that Cruz used to strike Pivaral. As a result of the injuries to his left temple, left ear and left side of his head, Pivaral received twenty-one stitches and was left with permanent scars.

The evidence was uncontested and overwhelming that Cruz, the defendant's coparticipant, used a dangerous instrument. Here, it is not in dispute that Cruz threatened to use and did use the stick in a manner that was capable of causing and did cause serious physical injury to Pivaral in the form of gouges to his head. At trial, the defendant testified that Cruz approached the driver's side window where Pivaral was sitting, "stuck the stick" in the window and demanded money. In addition, the defendant testified that Cruz held the stick "like he had a gun" and that he "must have hit [Pivaral] with the stick."

In an amended information, dated July 15, 2003, the state charged the defendant with criminal attempt to commit robbery in the first degree and assault in the second degree as an accessory. A jury trial was held on July 15, 17 and 18, 2003, after which the jury found the defendant not guilty on the charge of assault in the second degree as an accessory. The defendant, however, was found guilty of attempt to commit robbery in the first degree. Thereafter, the court imposed a sentence of ten years incarceration, to run consecutively to a sentence he already was serving for violating his probation. This appeal followed. Additional facts will be set forth where necessary.

The defendant claims on appeal that the court's instructions to the jury were misleading and ambiguous

with respect to the essential elements of attempt to commit robbery in the first degree. More specifically, the defendant claims that it was reasonably possible that the jury was misled by the court's oral and written instructions because they lacked a single, concise statement instructing the jury that in order to find him guilty of the charged offense, it had to find that the other participant in the crime used or threatened to use a dangerous instrument. The defendant concedes that this claim was not preserved at trial, but he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] We agree with the defendant that the record is adequate for our review and that the claim is of constitutional magnitude. *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988) ("[i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged"). We, however, conclude that the defendant has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial under the third prong of *Golding*. Therefore, we conclude that his claim fails.

In reviewing a jury instruction for impropriety, we adhere to the well established rule that "a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161

---

[3] "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 359–60, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

(1995). Our Supreme Court often has stated that a challenged jury instruction will not be tested by reference to whether the legal principles espoused in the charge are as accurate as those articulated in the opinions of the court of last resort. Id. Rather, the test of a court's charge is "whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) Id. Accordingly, we do not view the instructions as improper when the instructions are "correct in law, adapted to the issues and sufficient for the guidance of the jury . . . ." (Internal quotation marks omitted.) Id. "Moreover, as to unpreserved claims of constitutional error in jury instructions, [our Supreme Court has] stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 865, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

We begin by reviewing the court's instructions to the jury with respect to the charge of attempt to commit robbery in the first degree. The court instructed the jury that the defendant was charged, under the first count of the information, with attempt to commit robbery in the first degree. Because the inchoate offense of attempt requires that the elements of robbery in the first degree be stated to the jury, as well as the elements of attempt, the court stated that it would explain a step-by-step procedure and analysis for the jury to employ. The court instructed the jury that "the first thing [it had] to determine [was] whether the defendant [committed] what's called a larceny," and the court proceeded to give the elements of the offense of larceny, which are not in dispute in this appeal. Thereafter, the court stated that if the jury made a finding that the defendant committed a larceny, it "must then determine if he [committed] a robbery." Robbery, the court explained, is

committed "when in the course of committing a larceny, a [person] uses or threatens the immediate use of physical force upon [another] person for the purpose of compelling the property to be delivered up." The court continued by stating that the offense of robbery requires "a specific intent to commit larceny by force." The court further instructed the members of the jury that "[r]obbery then becomes first degree when in the course or commission of a robbery, the defendant or another participant in the crime, uses or threatens the use of a dangerous instrument." After repeating the elements of robbery in the first degree, the court defined the term "dangerous instrument."[4]

Next, the court reiterated that the state was charging the defendant with the commission of the crime of attempt to commit robbery in the first degree. The court read the text of § 53a-49 (a) (2), which provides the elements of the offense of attempt, and continued by adapting the principles of the attempt statute to the facts of the present case. More specifically, the court, in addressing the first element of attempt, stated that the defendant "must have acted with the same intent, the same state of mind required for the crime of robbery . . . ." With respect to the second element, the court instructed that "the defendant must have acted to carry out that intent under the circumstances as he believed them to be, he must have engaged in conduct, which was a substantial step in a course of conduct, planned to end in his commission of the crime of robbery."

Thereafter, the court instructed the jury on the doctrine of accessorial liability under the robbery in the first degree statute. The court stated the following:

---

[4] In accordance with General Statutes § 53a-3 (7), the court defined dangerous instrument as "any instrument, which, under the circumstances in which it is used or threatened to be used, is capable of causing serious physical injury."

"Under our law, a defendant can be convicted of robbery in the first degree as a principal offender, as a principal, where a participant, other than the defendant, uses or threatens the use of a dangerous instrument. The statute imposes liability on a defendant when he commits robbery with another person, who, although unbeknownst to him, uses or threatens the use of any such dangerous instrument. . . . To be guilty as an accessory, the defendant does not have to intend to commit robbery in the first degree or robbery by means of a dangerous instrument. *In this regard, all that is required is proof beyond a reasonable doubt that the defendant intended to commit a robbery or a larceny by force, as we've discussed. It's not necessary, therefore, that the state prove that the defendant intended or was even aware that a confederate would use a dangerous instrument.*" (Emphasis added.) Last, the court instructed the jury that "if [it] [found that] the state [had] proven all of these elements beyond a reasonable doubt, [its] verdict as to this defendant, as principal or accessory, would be guilty of attempted robbery in the first degree." In addition to its oral charge, the court provided the members of the jury with written instructions to summarize its oral instructions.[5]

At oral argument before this court, the defendant asserted that the court's charge to the jury was ambiguous with respect to the instruction on the dangerous

[5] With respect to the charge of attempt to commit robbery in the first degree, the written instructions stated: "Bearing in mind the instructions I have given you regarding *'principal and accessory liability,' 'intent,' 'larceny,' 'robbery'* and *'Attempt To Commit Robbery in the First Degree,'* in order for you to find the defendant guilty under the 1st count of the information, the State has the burden to prove beyond a reasonable doubt that the defendant acting as principal or accessory: 1. Intended to wrongfully take property from Jorge Pivaral with intent to deprive him of that property; and 2. He intentionally did something which, under the circumstances as he believed them to be, was an act constituting a substantial step in a course of conduct planned to culminate in the robbery of Mr. Pivaral." (Emphasis in original.)

instrument element and directed us to the portion of the oral instructions italicized previously and to the written instructions. With respect to the written instructions, the defendant argues that they are flawed because they failed to mention expressly the dangerous instrument element. See footnote 5 of this opinion. Specifically, the defendant refers to a portion of the oral instructions in which the court indicated that the written summary sheet would contain "the essential elements [of the crimes charged] . . . ." Although the written instructions do not list specifically the dangerous instrument element of robbery in the first degree, they instruct the jury to "[bear] in mind" the charges given orally concerning "principal and accessory liability" and "attempt to commit robbery in the first degree." In addition to defining the term "dangerous instrument" in its oral charge, the court also provided instructions on robbery in the first degree and accessorial liability, which repeatedly apprised the jury of how the defendant could be convicted when a coparticipant threatened to use or used a dangerous instrument. Accordingly, we cannot conclude that it was reasonably possible that the summary sheet misled the jury as to the elements of attempt to commit robbery in the first degree when the sheet expressly referred to the oral instructions that, when read as a whole, instructed the jury several times on the dangerous instrument element.

To support his assertion that the court failed to instruct the jury that it must find that the other participant in the crime used or threatened to use a dangerous instrument, the defendant focuses on only two sentences in the court's comprehensive oral instructions. The challenged portion, however, represents only a part of the court's explanation of the doctrine of accessorial liability. Rather than viewing the challenged statements

in isolation, we consider the instructions to the jury as a whole. *State* v. *Leroy*, supra, 232 Conn. 8. The defendant ignores the part of the court's charge immediately preceding the challenged portion, in which the court stated that "a defendant can be convicted of robbery in the first degree . . . as a principal, where a participant, other than the defendant, uses or threatens the use of a dangerous instrument. The statute imposes liability on a defendant when he commits a robbery with another person, who, although unbeknowst to him, uses or threatens the use of any such dangerous instrument." These two sentences informed the jury that the defendant, under the doctrine of accessorial liability, could not be convicted of robbery in the first degree unless the coparticipant used or threatened to use a dangerous instrument.

Moreover, it is worth noting that a careful reading of the jury instructions in their entirety further belies the defendant's assertion of ambiguity in the charge. Because an instruction on attempt to commit robbery in the first degree requires a discussion of the underlying crime, the court explained the elements of the charged offense by employing a step-by-step procedure and analysis, which closely tracks the standard jury instruction for attempt found in D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (3d Ed. 2001) § 5.2, pp. 367–69. In its explanation of the elements of the underlying crime of robbery in the first degree, the court's step-by-step procedure instructed the jury to make findings and determinations as to the elements of larceny and robbery. Thereafter, the court repeatedly instructed on the dangerous instrument element of robbery in the first degree, stating that it was established when either the defendant or another participant in the crime used or threatened the use of a dangerous instrument. After discussing the elements

of attempt, the court explained accessorial liability, and, as noted previously, those instructions stated, more than once, how the defendant could be convicted of robbery in the first degree if another participant used or threatened to use a dangerous instrument.[6] To summarize, the court reminded the jury that it must find that the state proved all of the elements beyond a reasonable doubt in order to find the defendant guilty of the charged offense.

Although the court's instructions to the jury must be correct in law, adapted to the issues and not misleading to the jury, we also are cognizant that the instructions need not be perfect, exhaustive or technically accurate. See *State* v. *Stevenson*, 53 Conn. App. 551, 573, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999). Accordingly, we conclude that contrary to the defendant's claim, the court's failure to preface its instruction on the dangerous instrument element with the word "find" does not render the instruction defective. Viewing the court's instructions to the jury as a whole, we conclude that the jury was instructed properly on the dangerous instrument element and was apprised that it had to find beyond a reasonable doubt that the state had proven all of the elements in order to find the defendant guilty of attempt to commit robbery in the first degree. The defendant's claim fails to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We note that the defendant makes no claim concerning the sufficiency of the evidence in this appeal.