STATE OF CONNECTICUT *v.* GILBERT I.[1]
(AC 28134)

Flynn, C. J., and Bishop and Beach, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued January 22—officially released April 8, 2008

*Joseph Visone*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Gilbert I., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and risk of injury to a child in violation of General Statutes §§ 53-21 (a) (1) and (2).[2] On appeal, the defendant claims that (1) the trial court improperly admitted opinion testimony by the state's expert witness, (2) the court improperly

---

[2] We note that the conduct that gave rise to the risk of injury charges allegedly occurred between 1999 and 2001. Although General Statutes § 53-21 was amended during that time, there is no dispute that the conduct in which the defendant allegedly had engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21 as the revision of the statute under which the defendant was charged.

permitted the state to introduce evidence of the defendant's prior misconduct and (3) he was deprived of a fair trial as a result of prosecutorial impropriety. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. While the victim was approximately eight and nine years old, she periodically was sexually assaulted in her home by her former stepfather, the defendant. According to the victim's testimony, she was assaulted on multiple occasions during this period.

The victim did not tell anybody about the assaults until she was approximately fourteen years old, at which point she told her stepmother, her father and her mother. The victim also provided a written statement to the Waterbury police department. The defendant was arrested shortly thereafter and charged with sexual assault in the first degree and risk of injury to a child.

The defendant's case was tried to the jury in June, 2006. Following a guilty verdict by the jury on all counts charged, the defendant was sentenced on August 25, 2006, to a total effective term of twenty-five years incarceration and ten years probation. This appeal followed.

I

The defendant first claims that his "right to confront the witnesses against him was violated when the state's expert witness was allowed to testify beyond the permissible scope of testimony normally allowed for experts." Specifically, the defendant challenges the court's admission of hearsay testimony in the form of "unnamed statistical studies of delayed reporting of abuse [and] anecdotal evidence" provided by the state's sexual abuse expert, Diane Edell. We do not agree.

The defendant did not preserve his claim at trial but seeks review under *State* v. *Golding*, 213 Conn. 233,

239–40, 567 A.2d 823 (1989).[3] The record is adequate for review, but the defendant's claim fails under the second prong of *Golding* because the claimed error is evidentiary in nature and is not of constitutional magnitude.

"It is well established that every evidentiary ruling that denies a defendant a line of inquiry is not a violation of his constitutional rights. The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process. . . . Accordingly, [t]he defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . . Thus, [o]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed. . . . We previously have stated that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Citations omitted; internal quotation marks omitted.) *State* v. *Gerald W.*, 103 Conn. App. 784, 797–98, 931 A.2d 383, cert. denied, 284 Conn. 933, 935 A.2d 152 (2007); see also *State* v. *Kulmac*, 230 Conn. 43, 55, 644 A.2d 887 (1994).

---

[3] "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Hill*, 102 Conn. App. 584, 588 n.3, 925 A.2d 1220, cert. denied, 284 Conn. 914, 931 A.2d 933 (2007).

The essence of the defendant's argument is that without proper examination of Edell concerning her reliance on outside sources cited in her testimony, Edell's testimony was impermissible hearsay in violation of the confrontation clause. The concerns of the defendant, however, namely, the trustworthiness and reliability of the testimony, are addressed by the rules of evidence concerning expert testimony rather than the confrontation clause. See *George* v. *Ericson*, 250 Conn. 312, 321, 736 A.2d 889 (1999) ("an expert's opinion is not rendered inadmissible merely because the opinion is based on inadmissible hearsay, so long as the opinion is based on trustworthy information and the expert had sufficient experience to evaluate that information so as to come to a conclusion which the trial court might well hold worthy of consideration by the jury" [internal quotation marks omitted]); see also Conn. Code Evid. § 7-4. Experts commonly rely on statistical studies and other sources. As stated in *In re Barbara J.*, 215 Conn. 31, 574 A.2d 203 (1990), "[w]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." (Internal quotation marks omitted.) Id., 43.

Furthermore, the defendant had the opportunity to cross-examine Edell as to her reliance on the outside sources but did not do so.[4] See *State* v. *Singh*, 59 Conn. App. 638, 652, 757 A.2d 1175 (2000) ("reliance on information provided by others does not violate the confrontation clause where the expert is available for cross-examination concerning the nature and reasonableness of his reliance"), rev'd on other grounds, 259 Conn. 693,

[4] The outside sources were statistical studies regarding delayed reporting of sexual abuse claims and a conversation with an employee of Saint Francis Hospital and Medical Center about the frequent lack of physical evidence in sexual abuse claims.

793 A.2d 226 (2002). Simply put, outside sources are used to show the basis of the expert's opinion rather than for extrinsic substantive proof. See *George* v. *Ericson*, supra, 250 Conn. 324–25. Because the court's admission of Edell's expert testimony did not implicate a fundamental constitutional right, we decline to review the defendant's unpreserved evidentiary claim.

## II

The defendant next claims that the court improperly permitted the state to introduce evidence of his prior misconduct. Specifically, the defendant claims that he was prejudiced by the victim's testimony referencing his prior misconduct with the victim's baby-sitter.[5]

The defendant did not preserve his evidentiary claim for our review. Our review of the record discloses that the defendant did not raise a specific prior misconduct objection to any part of the victim's testimony but, rather, objected to the testimony in question as "nonresponsive." "Appellate review of evidentiary rulings is limited to the specific legal ground raised by the objection of counsel at trial. . . . A specific objection is necessary to alert the trial court to purported error while there is time to correct it without ordering a retrial and to permit the opposing party to argue against the objection at trial." (Citations omitted.) *State* v. *Goodrum*, 39 Conn. App. 526, 543, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995); see also *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 30, 807 A.2d 955 (2002). The defendant does not assert that he is entitled to any extraordinary means of review of

---

[5] The following colloquy occurred during the victim's testimony:

"[The Prosecutor]: How long did [the baby-sitter] work with you?

"[The Witness]: Watch us? A couple—like, I think it was a year and a couple months until she and [the defendant] did something and mom kicked her out.

"[Defense Counsel]: Objection. Nonresponsive."

his unpreserved evidentiary claim, and we will not afford it review.

We also note that even if we were to afford review of the defendant's claim, it would not help the defendant. The testimony to which he takes exception, specifically that "[the defendant] did *something* and mom kicked [the baby-sitter] out," perhaps could lead to vague speculation but is not a clear expression of prior misconduct on the part of the defendant. (Emphasis added.) See, e.g., *State* v. *Boykin*, 74 Conn. App. 679, 687, 813 A.2d 143 ("[s]imply stated, the remark's lack of specificity leads us to conclude that the remark did not unfairly prejudice the defendant in the eyes of the jury"), cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

### III

The defendant last claims that he was deprived of a fair trial as a result of prosecutorial impropriety, namely, that he "was prejudiced by the state's closing argument, which shows a pattern of pandering to the emotions and sympathies of the jury."[6] We are not persuaded.

Before we examine the challenged remarks, we set forth our standard of review. "Prosecutorial [impropriety] claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute [an impropriety]. Second, if [an impropriety] occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the

---

[6] Despite the defendant's failure to object to these statements at trial, his claim is reviewable in light of *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978 (2007). "Once prosecutorial impropriety has been alleged . . . it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, supra, [213 Conn. 239–40] and it is unnecessary for an appellate court to review the defendant's claim under *Golding*." *State* v. *Fauci*, supra, 33.

conviction a denial of due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Pedro S.*, 87 Conn. App. 183, 187, 865 A.2d 1177, cert. denied, 273 Conn. 924, 871 A.2d 1033 (2005).

"Because the claimed prosecutorial [impropriety] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Farr*, 98 Conn. App. 93, 106, 908 A.2d 556 (2006).

As noted, the first step in our analysis is to determine whether any of these statements were improper. In his brief, the defendant cites several statements made by the prosecutor in closing argument that he claims were appeals to the emotions and sympathy of the jury, such as, "[r]emember when they're first born," and, "[y]ou held that little baby in your arms, and before you [knew] it, that little baby was out of your arms, and that little baby was grabbing on to your ankles, and they're trying to crawl up your legs to be able to walk with you."[7]

---

[7] The excerpt of the closing argument in question is as follows:

"[The Prosecutor]: Good afternoon, ladies and gentlemen. Have you ever heard the maxim, enjoy your kids while they're young, they grow up so fast? It didn't really mean anything until you had kids of your own, until you touched those kids, and then you realized they do grow up fast, and you give—gives you an appreciation to enjoy them.

"Remember when they're first born, you all have children and some of you have nieces and nephews? You held that little baby in your arms, and

The state argues that the comments in question, "when read in context, did nothing more than speak to the jurors' common sense and everyday life experiences with children." We conclude that there was no impropriety on the part of the prosecutor.

Although a prosecutor may not appeal excessively and gratuitously to the emotions of the jury; *State* v. *Warholic*, 278 Conn. 354, 376, 897 A.2d 569 (2006); he

before you [knew] it, that little baby was out of your arms, and that little baby was grabbing onto your ankles, and they're trying to crawl up your legs to be able to walk with you. And then they get to be two and three years old, and they're off on their own. They're running down store aisles, they're behind you, they're in front of you, they're around you. And then the stage comes when they're five years old and they're going off to kindergarten. They've got that backpack on their back, the brand new lunch box, and they're probably just about this high at that time, and maybe you have to stoop down to have your picture taken with them because they're just that little. And then first grade comes and off they go, their full day of school. Again, the big backpack that's weighing them back, and they're maybe about this big at that point, and you send them off for their day by themselves, and that's your first break with them. And then second and third grade come along, and usually with those grades come soccer, T-ball, Girl Scouts, Brownies, Cub Scouts. They're still there and they're still your baby. Fourth grade comes, halfway through their grammar school career. They're probably about this big. You're probably letting them all go off to the bus at that time by themselves. Then we have fifth, sixth, seventh grade, they're hitting middle school. A lot of activities start, we've come to that. They're probably about this big now when they get to those grades. And then they enter high school, and they really think they're old at that stage, but you know they're still your baby. And maybe when they're at high school age, they're probably level with you at that point, and they're going off to finish their four years of formal education. Some will be starting their careers at the end of those four years. Other of them might have the opportunity to go on off to college. But that's what you have. You have those years with your children and then off they go.

"Now, I want you to just to think about that child, that baby in your arms and that child going off at the end of its high school career, and I want you to take a few steps back because you met [the victim] when she was a freshman in high school, when she was just starting off on that high school career, when [the victim's] about this tall. But step back in time. On—on September 9, 2004, [the victim] was thirteen years old, so she was that much younger when she first talked with her stepmom and dad and her mother about what [the defendant] did to her."

or she may properly appeal to a jury's common sense and everyday experience. Id., 365. Here, the state's closing argument appealed to the common sense notion that children mature quickly, and that, consequently, the jury should keep in mind the age and experience of the victim at the time the abuse occurred, as opposed to her appearance and maturity level at trial almost eight years later. Although the prosecutor's emphasis on that point could have been delivered more succinctly, we recognize that "[t]he occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Schiavo*, 93 Conn. App. 290, 304, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006); see also *State* v. *Williams*, 102 Conn. App. 168, 190–93, 926 A.2d 7, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007); *State* v. *Chasse*, 51 Conn. App. 345, 361, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Accordingly, we conclude that the prosecutor's closing arguments were not improper, and, therefore, could not have prejudiced the defendant and deprived him of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.