STATE OF CONNECTICUT *v.* CHEVOL A. SMITH
(AC 27762)

Bishop, Lavine and Robinson, Js.

Argued May 19—officially released September 2, 2008

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*Michael Proto*, deputy assistant state's attorney, with whom were *Michael E. O'Hare*, supervisory assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Alison Thomas Flood*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Chevol A. Smith, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent as an accessory in violation of General Statutes §§ 53a-8 and 21a-278 (b), sale of narcotics within 1500 feet of a school as an accessory in violation of General Statutes §§ 53a-8 and 21a-278a (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d). On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction, (2) the state engaged in prosecutorial impropriety[1] during closing arguments, thereby depriving him of his due process right to a fair trial, and (3) the identification of the defendant through the use of a prior police photograph was prejudicial to his right to a fair trial. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 31, 2005, Mark Grandpre, a detective with the statewide cooperative crime control task force, was working undercover in the Arthur Street area of New

[1] In *State* v. *Fauci*, 282 Conn. 23, 917 A.2d 978 (2007), our Supreme Court concluded that the term "prosecutorial impropriety" is more appropriate than the traditional term "prosecutorial misconduct." Id., 26 n.2. Although the parties briefed and argued the defendant's claim utilizing the nomenclature of "prosecutorial misconduct," we have used the term "prosecutorial impropriety" in our analysis of the defendant's claim.

Haven. He observed two men who were later identified as Joseph Harris and the defendant. Grandpre made eye contact with Harris, who entered his vehicle and instructed Grandpre to drive around the block. During the drive, Harris and Grandpre negotiated a drug deal for crack cocaine, eventually settling on the sale of three bags for $40. After the negotiations concluded, Harris gave Grandpre two clear plastic bags of a substance later identified as crack cocaine. He then instructed Grandpre to stop the car at the intersection of Rosette Street and Dewitt Street.[2]

After the car was stopped, Harris called over the same individual who Grandpre previously had observed with Harris before he entered the vehicle. The man, who Harris referred to as "Stutter," and was later identified by Grandpre as the defendant, provided a third bag of crack cocaine; this one, however, was made of red plastic. Grandpre then paid $40 to Harris in exchange for the three bags. The entire transaction was videotaped by a hidden video camera inside the vehicle, but, due to the camera's angle, only the hand of the defendant was visible.

No arrests were made on May 31, 2005, to preserve Grandpre's undercover status. Over the next several weeks, Grandpre circulated still photographs of Harris in the New Haven police department and sought to identify the man known as "Stutter." An officer recognized the street name "Stutter" and showed Grandpre a photographic array that included an arrest photograph of the defendant. On the basis of his observations prior to picking up Harris, as well as his observations during the transaction itself, Grandpre identified "Stutter" as the man in the photograph. Quincy Freeman, a New Haven police officer, also identified the defendant as

---

[2] Located at 140 Dewitt Street was Hill Central School. The school was located 1145 feet away from the site of the drug transaction.

the man known as "Stutter" and further stated that he knew no one else by that moniker.

On the basis of the preceding facts, the defendant was charged in a four count information with (1) sale of narcotics by a person who is not drug-dependent, (2) sale of narcotics within 1500 feet of a school, (3) possession of narcotics and (4) possession of a narcotics within 1500 feet of a school. On March 9, 2006, after a jury trial, the defendant was found guilty on all four counts.[3] On May 18, 2006, the court imposed a total effective sentence of eleven years, suspended after eight years, with three years probation. On June 19, 2006, the court subsequently modified the defendant's sentence resulting in a total effective sentence of twelve years, suspended after five years, five months, with three years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to sustain his conviction. Specifically, he argues that there was insufficient evidence to prove (1) his identity as the second participant in the drug transaction and (2) that he had the requisite intent as an accessory. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

---

[3] The court merged count three into count one and count four into count two.

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 238–39, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 798, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). Furthermore, "[i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Farnum*, 275 Conn.

26, 36, 878 A.2d 1095 (2005). Guided by these principles, we now turn to the defendant's specific claims.

A

The first argument posed by the defendant is that the evidence adduced at his trial was insufficient to establish his identity with respect to the charges stemming from the drug transaction. On the basis of our review of the record, we conclude that sufficient evidence existed from which the jury could find that the defendant was the second participant.

"It is black letter law that in any criminal prosecution, the state bears the burden of proving beyond a reasonable doubt the defendant's identity as one of the perpetrators of the crime charged." *State* v. *Smith*, 280 Conn. 285, 302, 907 A.2d 73 (2006). In the present case, the defendant argues that the state presented insufficient evidence to link him to the transaction. Specifically, the defendant contends that Grandpre had limited time to observe him and was preoccupied during that limited time with other tasks. The defendant also maintains that Grandpre was not previously familiar with him and that the passage of several weeks before the identification made Grandpre's subsequent identification suspect. Furthermore, the defendant refers to Grandpre's inability to provide specific identifying characteristics during his testimony. He also emphasizes the testimony of Harris, who repeatedly testified that he did not know the defendant and that he had acted alone during the transaction.

The jury logically and reasonably could have concluded that the defendant was the second participant involved in the drug transaction on the basis of the testimony of Grandpre. Grandpre, a trained undercover narcotics officer, testified that he was patrolling the area with the specific purpose of locating and identifying drug dealers. Grandpre testified that during his

patrol, he had observed the defendant on two separate occasions. The first was when Grandpre was driving and the defendant and Harris were walking toward him on the right side of the street. Grandpre was close enough to both men to be able to establish eye contact and to signal his intention to purchase narcotics. The second observation was made when the defendant approached the passenger window of Grandpre's stopped vehicle. At this time, the defendant was close enough to Grandpre that the defendant's hand was visible on the hidden camera film depicting the events inside the vehicle. Our Supreme Court has stated that "when determining whether a witness had sufficient time to observe a defendant to ensure a reliable identification . . . a good hard look will pass muster even if it occurs during a fleeting glance. . . . In particular, we have recognized that a view of even a few seconds may be sufficient for a witness to make an identification . . . and that it is for the trier of fact to determine the weight to be given that identification." (Citations omitted; internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 801–802, 877 A.2d 739 (2005). Therefore, on the basis of these two observations, the jury reasonably could have concluded that Grandpre was able to recognize the defendant when shown photographs of males at the police station several weeks after the transaction took place.

This conclusion was buttressed by the fact that Grandpre was also able to identify the defendant in court during the trial. Although the defendant argues that Grandpre's testimony was not credible, it falls within the province of the jury to determine what weight the testimony should be afforded. "[W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is

sufficient evidence to support the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State v. Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995). Additionally, because the jury has the opportunity to observe the conduct, demeanor and attitude of the witnesses and to gauge their credibility, "[i]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony." *State v. Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002).

Furthermore, regarding the testimony of Harris, the jury reasonably could have found his testimony to lack credibility and, therefore, could have chosen to afford it little or no weight. At the trial, Harris testified that he worked alone and had no knowledge of a man named "Stutter"; his testimony, however, was contradicted by a letter he signed while incarcerated that identified the defendant by name as "Stutter" and stated that Harris used "Stutter" as a decoy in the transaction. Harris also testified that he did not know who handed him the third bag through the window, having been high for the previous three days. The jury reasonably could have concluded that his testimony lacked credibility, given his conflicting statements. See *State v. Meehan*, supra, 260 Conn. 381.

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that Grandpre's testimony was sufficient to establish the identity of the defendant as the second participant in the drug transaction.

### B

The defendant also claims that there was insufficient evidence to support his conviction because the evidence adduced at trial did not establish that he, as an accessory, possessed the requisite intent to assist the primary actor, Harris. We disagree.

Section 53a-8 (a) provides in relevant part that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . as if he were the principal offender." Our Supreme Court has stated that "a conviction under § 53a-8 requires proof of a dual intent, i.e., that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Foster*, 202 Conn. 520, 525–26, 522 A.2d 277 (1987).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 656, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

The defendant argues that his mere presence at the scene of the drug transaction is insufficient to establish that he acted with the intent to assist Harris in the commission of the crime. In support of this contention, the defendant references Harris' testimony to establish that Harris acted alone and without his aid. We already have stated, however, that it is within the province of the jury to determine the credibility of a witness and, accordingly, to determine whether to believe all or only part of a witness' testimony. See *State* v. *Meehan*, supra, 260 Conn. 381; *State* v. *Mejia*, supra, 233 Conn. 224.

Notwithstanding the conflicting testimony provided by Harris, the jury reasonably could have found that the defendant acted with the dual intent to commit the offense and to assist Harris during the drug transaction. According to Grandpre, he saw the defendant with Harris before Harris entered the vehicle and instructed Grandpre to drive around the block. Grandpre also testified that the same man was standing at the intersection where Harris ordered Grandpre to stop. When the car was stopped, Harris called the defendant over, referring to him by the name "Stutter." When the man approached, he handed Harris a red plastic bag through the window. Although the defendant's face does not appear on the film, the hidden camera film depicted the passing of the bag to complete the transaction. This bag was tested subsequently and found to contain crack cocaine.

Furthermore, the course of events described by Grandpre was in conformity with the testimony of Michael Wuchek, a narcotics expert. According to Wuchek, it is common for drug dealers to work in pairs, each carrying a limited quantity of drugs. It is also common, in these circumstances, for dealers to combine their limited quantities if necessary to make a sale. Given the cumulative force of this evidence, the jury reasonably could have concluded, beyond a reasonable doubt, that the defendant had the requisite dual intent necessary to support a conviction as an accessory to the charges of possession and sale of a narcotic substance.

## II

The defendant next claims that the state engaged in prosecutorial impropriety during closing arguments and thereby deprived him of his due process right to a fair trial. Specifically, he maintains that the prosecutor improperly injected her personal opinion, as well as

the opinion of the state, into her closing arguments regarding the credibility of Harris.[4]

Before we examine the challenged remark, we set forth the appropriate standard of review. "Prosecutorial [impropriety] claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute [an impropriety]. Second, if [an impropriety] occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Pedro S.*, 87 Conn. App. 183, 187, 865 A.2d 1177, cert. denied, 273 Conn. 924, 871 A.2d 1033 (2005).

We are also guided by additional legal principles regarding claims of prosecutorial impropriety during closing argument. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something

---

[4] The defendant has requested review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "In cases of unpreserved claims of prosecutorial [impropriety], however, it is unnecessary for the defendant to seek to prevail under the specific requirements of . . . *Golding* . . . and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 681–82, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008).

must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 682, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). With these principles in mind, we now address the defendant's claim.

The defendant takes issue with the following statement made by the prosecutor during her closing arguments: "We heard from Joseph Harris, and I don't think I have to spell out for you what exactly is going on here. Joseph Harris testified himself it's not good to be a snitch in prison, it's not good to testify when you're in prison. He was very inconsistent with his testimony on the [witness] stand. *I think it was quite obvious— the state thinks it was quite obvious.*" (Emphasis added.) The defendant argues that this statement inappropriately expressed the opinion of the prosecutor and, even more importantly, the opinion of the state. In light of the record as a whole, we conclude that this remark does not constitute prosecutorial impropriety.

"[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *State* v. *D'Haity*, 99 Conn. App. 375, 389, 914 A.2d 570, cert. denied, 282 Conn. 912, 924 A.2d 137 (2007). "The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his

opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Grant*, 286 Conn. 499, 546, 944 A.2d 947 (2008).

A review of the transcript reveals that the prosecutor's remark at issue was made as part of her broad summary of each witness' testimony. She began her summary of Harris by stating, "I don't think I have to spell out for you what exactly is going on here," and then referring to his testimony that he recognized that it is not good to be known as a "snitch" in prison. Although the general rule provides that a prosecutor may not inject a personal opinion regarding credibility, our Supreme Court has explained that "[i]t is not improper for a prosecutor to remark on the motives that a witness may have to lie, or not to lie, as the case may be." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 585, 849 A.2d 626 (2004). Therefore, to the extent that this statement can be seen as a comment on Harris' credibility, the prosecutor's comment is appropriate to indicate his potential motive to lie and, accordingly, does not amount to prosecutorial impropriety.

The comment relating to a potential motive was then followed by a statement that Harris was inconsistent with his testimony on the witness stand. During the trial, a letter signed by Harris while incarcerated was referenced in his testimony, and the letter itself was admitted into evidence. The contents of the letter contradicted the testimony given by Harris during the trial;

therefore, the prosecutor's comment about the inconsistencies did not amount to prosecutorial impropriety because it appropriately related to the evidence presented at trial and posited a reasonable conclusion that the jury itself could have reached without the prosecutor's personal knowledge of the case. See *State* v. *Smith*, supra, 107 Conn. App. 682.

Finally, the prosecutor concluded her commentary on the inconsistencies in Harris' testimony with the statement: "I think it was quite obvious—the state thinks it was quite obvious." We note that "[a]lthough prosecutors generally should try to avoid using phrases that begin with the pronoun *I*, such as *I think* or *I believe*, [our Supreme Court has] recogniz[ed] that the use of the word *I* is part of our everyday parlance and . . . because of established speech patterns, it cannot always easily be eliminated completely from extemporaneous elocution. . . . Therefore, if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute misconduct." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 436, 902 A.2d 636 (2006). Furthermore, "[t]he mere use of phrases such as *I would think, I would submit,* and *I really don't think*, does not transform a closing [argument] into the improper assertions of personal opinion by the [prosecutor]." (Emphasis added; internal quotation marks omitted.) *State* v. *Santiago*, 103 Conn. App. 406, 421, 931 A.2d 298 (concluding that prosecutor's use of phrases, "I believe," "I would think" and "the state believes" does not amount to interjection of personal opinion or beliefs), cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). As we already have determined that the prosecutor's statement regarding the inconsistencies in Harris' testimony was properly based on the

evidence and the reasonable inferences arising therefrom, her use of the phrases "I think" and "the state thinks" as addenda to this statement does not rise to the level of prosecutorial impropriety.

Having concluded that there was no prosecutorial impropriety in closing argument, there is no need to undertake a due process analysis.

## III

The defendant's third claim is that his right to a fair trial was unfairly prejudiced by witness testimony that referenced the existence of a prior arrest photograph of the defendant. At the trial, Grandpre testified that he spoke with another officer who, on the basis of his knowledge of street names, identified the defendant as the person known as Stutter. Upon receiving this information, Grandpre testified: "[M]y partner went into the system and obtained a—an arrest photo—of the defendant." The defendant contends that this remark unfairly prejudiced his right to maintain his innocence. We do not agree.

The defendant did not preserve his claim at trial but now seeks review pursuant to State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] As a preliminary matter, we note that "[e]videntiary claims do not

---

[5] In State v. Golding, supra, 213 Conn. 233, our Supreme Court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "In the absence of any one of the four Golding conditions, the defendant's claim will fail. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; internal quotation marks omitted.) State v. Kirk R., 271 Conn. 499, 506 n.12, 857 A.2d 908 (2004).

merit review pursuant to *State* v. *Golding*, [supra, 239–40], because they are not of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Nelson*, 105 Conn. App. 393, 413, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). Although we acknowledge that the record in the present case is adequate for review, we are not persuaded by the defendant's attempts to transform an evidentiary issue into one of constitutional magnitude. "Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review." (Internal quotation marks omitted.) *State* v. *Warren*, 83 Conn. App. 446, 452, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004). "[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Internal quotation marks omitted.) *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007).

In the present case, the defendant claims that the reference to his arrest photograph violated his right to a fair trial because it eroded the presumption of innocence that is a fundamental aspect of the right to a fair trial. We have stated that, as a general rule, "evidence of the commission of other crimes or specific acts of misconduct is inadmissible to prove that a defendant is guilty of the crime charged against him. . . . [However] [t]*he rule of admission of evidence of other crimes is a rule of evidence and not a rule of constitutional law.* . . . Generally . . . the admissibility of evidence is a matter of state law and unless there is a resulting denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue

is involved." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Pharr*, 44 Conn. App. 561, 579, 691 A.2d 1081 (1997). Specifically addressing remarks by witnesses about a defendant's prior criminal record, our Supreme Court has concluded that "[t]he rule against admitting evidence of prior crimes where such crimes are neither relevant to the state's case in chief nor appropriate for impeaching the defendant's credibility is a *rule of evidence*"; (emphasis added) *State* v. *Gunning*, 183 Conn. 299, 303, 439 A.2d 339 (1981); and does not implicate a fundamental constitutional right to a fair trial. Id., 302–303 (concluding that defendant not denied fundamental constitutional right or fair trial by reference, in testimony by witness for state, to his status as parolee).[6]

The defendant has sought *Golding* review of an evidentiary claim and has failed to establish a denial of fundamental fairness or a specific constitutional right that would bring his claim within the ambit of *Golding* review. Therefore, we decline to review the defendant's third claim. "[T]he defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . . Thus, [o]nce identified, unpreserved evidentiary claims

---

[6] Although the defendant attempts to frame his argument as the violation of a fundamental right, it is important to note that the general rule against admission of evidence of other crimes is subject to some exceptions, and therefore, cannot be considered fundamental to a fair trial. "The rationale of [the rule preventing evidence of guilt of other crimes] is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . [Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony." (Internal quotation marks omitted.) *State* v. *Stevenson*, 53 Conn. App. 551, 570–71, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

masquerading as constitutional claims will be summarily dismissed." (Internal quotation marks omitted.) *State* v. *Gilbert I.*, 106 Conn. App. 793, 796, 944 A.2d 353, cert. denied, 287 Conn. 913, 950 A.2d 1289 (2008).

The judgment is affirmed.

In this opinion the other judges concurred.